IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF
TENNESSEE AT NASHVILLE

| | |
|---|---|
| WENDY SNEAD, individually and on behalf of all others similarly situated, )<br><br>Plaintiffs. )<br><br>v. )<br><br>CORECIVIC OF TENNESSEE, LLC f/k/a CORRECTIONS CORPORATION OF AMERICA )<br><br>Defendant. ) | Civil Action No. _____<br><br>CLASS ACTION |

## CLASS ACTION COMPLAINT

**COMES NOW** the Plaintiffs, Wendy Snead, individually and on behalf of all others similarly situated, and for their causes of action against the Defendant would allege as follows:

### PRELIMINARY STATEMENT

1.  The Plaintiff and the proposed class, as defined in Paragraphs 88 *et seq.,* include those individuals currently and formerly housed at the Metro-Davidson County Detention Facility in Davidson County, Tennessee, a private prison owned and operated by CoreCivic, an entity formerly doing business as Corrections Corporation of America ("CCA"). During the time of incarceration, the Plaintiff and proposed class were entirely dependent on the Defendants to provide them with access to basic health care. However, they have been, and with regard to those still incarcerated, continue to be deprived of access to basic healthcare.

1

2.      Plaintiff files this Class Action seeking damages on behalf of themselves and all others similarly situated due to the Defendant's deliberate indifference to their serious medical needs while they were incarcerated, in violation of the Eighth and Fourteenth Amendments to the United States Constitution and their prohibition against cruel and unusual punishment.

3.      Plaintiff and all Class Members were exposed to *Sarcoptes scabiei* (hereafter "Scabies") caused by the spread of parasitic mites.  Scabies is most easily transmitted by skin-to-skin contact, bedding, clothing and towels. Female mites burrow under the skin, lay their eggs at the end of the tunneled burrows, and larvae hatch two to three days after the eggs are laid.  The mites cause intense itching, which facilitates re-infestation and skin eruptions that transfer the mites to new hosts.

4.      Defendant operates a private for-profit prison and therefore had direct control of the prisoners in its charge infected with scabies.  The Defendant deliberately failed to adequately screen those entering its facility, respond to inmate requests for medical attention, treat those infested with the parasite, quarantine the infected individuals in its care, or to take any other precautions to prevent the spread of scabies outside the facility. This caused a foreseeable and preventable systematic outbreak which spread to the Plaintiff and all others similarly situated.

## THE PARTIES

5.      Plaintiff Wendy Snead is a citizen of the State of Tennessee and a resident of Cheatham County, Tennessee.  She is a former inmate who was housed in the Defendant's facility in Davidson County.

2

6. The Defendant, CoreCivic of Tennessee, LLC, f/k/a Corrections Corporation of American ("CCA"), is a limited liability company organized under the laws of the State of Tennessee, with its principal place of business located at 10 Burton Hills Blvd., Nashville, TN 37215. CoreCivic's registered agent for process in the State of Tennessee is C T Corporation System, 800 S. Gay St., Suite 2021, Knoxville, TN 37929-9710. The Defendant owns and operates the Metro-Davidson County Detention Facility, housing prisoners sentenced to confinement in the Tennessee Department of Correction. As such, CCA performs a public function traditionally reserved to the state and is therefore subject to suit under 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

7. This action is brought pursuant to 42 U.S.C. § 1983 seeking to redress a deprivation of the Plaintiffs' rights by the Defendants acting under color of law, which rights are secured by the Eighth Amendment to the United States Constitution.

8. This complaint concerns the violation of civil rights, and this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 1343.

9. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

10. All of the claims alleged herein arose in the Middle District of Tennessee, and Venue is therefore proper pursuant to 28 U.S.C. § 1391.

## ALLEGATIONS OF FACT

11. As the allegations of this Complaint will demonstrate, the Defendant refused to provide the healthcare needed and requested by Plaintiff and members of the class. The Defendant refused to provide access to doctors and necessary medicine. When Plaintiff was finally

3

provided access to a physician outside of the facility, the Defendant refused to provide Plaintiff with the medicine she was prescribed.

12. In the Winter and Spring of 2017, there was a scabies outbreak in the Defendant's 1,300-bed jail facility in Nashville, Tennessee. The outbreak spread through various facilities in and around Nashville, Tennessee, which infested inmates, detainees, and those likely to come in contact with them, including court staff in Davidson County. Those infested with the parasite develop a visible rash, which was made known to the Defendant by observation and by frequent complaints, grievances, and requests for medical treatment by the inmates.

13. The scabies infestation leads to relentless and unbearable itching, especially at night. The rash results in scales, blisters, bleeding, and open sores caused by scratching. The rash caused by scabies infestation is readily distinguishable from other skin maladies due to the appearance of track-like burrows in the skin, which are created when female mites tunnel under the surface of the skin. Due to the severity of the itching at night, those infested with the parasite experience an inability to sleep until they have been treated and the infestation is in remission. The infestation results in permanent, visible scarring.

14. On or about December 13, 2016, Jennifer King was sent to the Defendant's facility as a pretrial detainee. She was housed within the "D Pod" for approximately one month. In January, 2017, she transferred to the "E Pod," when she started exhibiting symptoms of scabies infestation, including a visible and painful rash.

15. The Defendant houses pretrial detainees with other inmates serving sentences. There is no distinction in the conditions of their confinement.

16. Ms. King requested medical treatment and complained about the Defendant ignoring her complaints and refusing to provide medical services. Ms. King complained to the Warden,

the Assistant Warden, the case managers, and the guards. She filed numerous grievances, all of which went unanswered and ignored by the Defendant.

17. Ms. King begged the Defendant for relief and treatment. It was not until February 2017 that she was given access to a doctor. Pursuant to the Defendant's official policy, custom, and practice of ignoring requests for medical attention, the Defendant denied that King had any medical issues despite her obvious distress and visible rash, and refused to allow her to obtain outside medical treatment.

18. Plaintiff Wendy Snead was housed in "A Pod" at the Defendant's facility for a five-month DUI sentence. Plaintiff had been charged in 2013 and had remained sober in the four years since her charge, but was still required to serve the time.

19. Approximately four months into Plaintiff Snead's sentence, Jennifer King was transferred from E Pod into A Pod. By this time, King was covered from head to toe with the visible rash and it was obvious that she had been afflicted with it for some time. The Defendant advised Mrs. King that she "was not contagious." Prior to King's arrival, no inmates in Plaintiff Snead's unit showed any symptoms of a scabies infestation.

20. One of the inmates in A Pod had attended nursing school and recognized the rash. She complained to the Defendant that the rash appeared to be a scabies infestation.

21. Ms. King was placed in an 8-person cell, in close proximity to Plaintiff Snead and others. The women in this cell quickly started developing the rash on their bodies. Other women in A Pod started developing the rash as well.

22. One inmate refused to go into the same room as King because she had seen people with scabies infestation before and knew that King had the infestation. The Defendant did nothing in response to the inmate's repeated complaints.

5

23.    On or about May 1, 2017, a female guard employed by the Defendant searched the Internet for pictures of scabies. She stated that the rash that was spreading through the inmate population appeared to be a scabies infestation.

24.    Inmates began openly talking about the spread of the rash being a scabies infestation. In response, Guards employed by the Defendant began threatening Plaintiff and other inmates that if they mentioned the word "scabies," complained about it, or filed a grievance, they would be placed in solitary confinement. The guards informed Plaintiff and others that female inmates from E Pod, from which Mrs. King had transferred, were placed in solitary confinement for discussing the scabies infestation. In so stating, the Defendant acknowledged that inmates had been complaining about scabies in E Pod for some time prior to Mrs. King's transfer to A Pod.

25.    Inmates attempted to inform their family members about the scabies infestation over the phone and asked their families to research scabies on their behalf. Because the Defendant monitors all phone calls, those inmates immediately had their phone privileges revoked, in retaliation for attempting to bring light to the epidemic.

26.    On May 7, 2017, Plaintiff noticed red bumps developing on her right arm that resembled insect bites, which were accompanied by intense itching and a biting sensation.

27.    On May 8, 2017, the bites continued to spread and the itching intensified. Plaintiff showed a nurse, who dismissed Plaintiff's report and merely advised that Plaintiff change her soap. Plaintiff informed the nurse that she had been using the same soap for the last four months with no issues.

6

28. By May 9, 2017, Plaintiff's body was covered with the bites and rash, and she requested another sick call. By May 11, inmates were noisily complaining that the rash was scabies. Plaintiff's request for a sick call had still not been fulfilled.

29. Plaintiff thereafter began filing formal grievances due to the refusal of the Defendant to provide her access to medical treatment. From May 9th until her departure from the facility, Plaintiff filed seven (7) grievances in total, none of which were ever addressed by the Defendant.

30. Because of the Defendant's deliberate indifference to the grievances filed by Plaintiff and others, the women promised to file a new grievance each day until the Defendant addressed the issue, all of which were ignored or discarded by the Defendant.

31. By May 12, 2017, the itching was unbearable and Plaintiff was unable to sleep. Her request for a sick call was ignored by the Defendant, and any of Plaintiff's attempts to speak about the sick call were met by the Defendant with anger and dismissal.

32. On May 13, 2017, Plaintiff was still unable to sleep and there was no response to her request for a sick call. Plaintiff feared disciplinary action if she attempted to follow through on her request for a sick call. Plaintiff, desperate for some sort of relief, broke down in tears to the Assistant Warden and begged for medical treatment, but none was ever provided.

33. Plaintiff had gone 72 hours without any sleep due to the intense itching, which was a frequent occurrence until her release. Plaintiff was physically, mentally, and emotionally tormented by the sensation of insects biting her and the inability to obtain any relief from the Defendant. She became physically ill from the stress, developing a fever and chills.

7

Plaintiff attempted to obtain a sick call to handle the fever, which was refused by the Defendant.

34. On May 14, 2017, Plaintiff was unable to hug her daughter during the Mother's Day visit due to fear of spreading the rash. Plaintiff was devastated. Due to the Defendant's deliberate indifference to her medical needs and continued refusal to respond to Plaintiff's request for medical attention, Plaintiff experienced emotional distress and hopelessness.

35. On May 15, the Defendant's facility was placed on lock down for 48 hours. Plaintiff was unable to communicate with her family and still had not received any response to her request for medical attention.

36. On May 17, 2017, Plaintiff was finally able to call her family, who reported the situation to the Metro-Nashville Health Department.

37. On May 18, 2017, a Nurse Practitioner employed by the Defendant saw Plaintiff Snead and refused to acknowledge the obvious presence of scabies. Numerous inmates reported that the rash was scabies and that they begged for help. Met with the Defendant's deliberate indifference, Plaintiff's family requested that the Health Department intervene.

38. On May 19, 2017, the Health Department scheduled an emergency dermatology appointment for Plaintiff Snead in Franklin, Tennessee. Plaintiff's dermatologist immediately diagnosed the rash as a scabies infestation and wrote a prescription for both oral and topical medications.

39. Upon her return from the doctor's appointment, the Defendant began retaliating against Plaintiff Snead. She was held at the intake building for over four (4) hours, during which time she was deprived of food. Although her physician had diagnosed and prescribed medication, Plaintiff was informed that her prescriptions would not be filled. Plaintiff was

8

then placed in segregation without food, a mattress or any of her personal belongings for many hours. She was not allowed to call her family. The Defendant's retaliation towards Plaintiff was intended to intimidate Plaintiff and other inmates from filing grievances, seeking outside medical treatment, or otherwise reporting the scabies outbreak to individuals outside of the Defendant's facility.

40.  Also on May 19, 2017, Ms. King made a court appearance before Judge Steve Dozier in the Davidson County Criminal Court. A copy of the transcript is attached as **Exhibit A**. Ms. King informed the Court that she was enrolled in the Sheriff's Anti Violence Effort ("SAVE") program but that she could not continue because she had a rash covering her body. She stated that she had the rash for four months. Judge Dozier asked Ms. King what programs she was unable to attend because of the rash:

> "The Court:        What's the – **what has this kept you going through**?
>
> Ms. King:        **Everything**, because they are –
>
> The Court:        You can't go to the SAVE program?
>
> Ms. King:        Right.  They are like –I started a couple of weeks and then I had to go to Med-Op and they tried to get it to heal up.  **So I just really need to go to the hospital**, I do."

41.  Ms. King was released on probation on or about May 21, 2017. She immediately went to the Baptist Hospital ER and was diagnosed with scabies. The ER doctor at Baptist prescribed her the medications needed to eradicate the scabies infestation, which she had been suffering from for over four and a half months while in the Defendant's custody.

42.  On May 20, 2017, Plaintiff Snead was given a single dose of medicine in the morning. She was still denied clean clothes and sheets, phone privileges, shower facilities, and any contact with her family for several days. The intentional deprivation of clean sheets,

9

clothes and other items necessary for basic hygiene enabled a re-infestation of scabies to occur.

43. A hot shower is one of the few forms of temporary relief from the intense itching caused by scabies. Plaintiff Snead repeatedly requested a hot shower but the Defendant refused to allow her to do so, without any justification.

44. On the fifth day after her return from her emergency dermatology appointment in Franklin, Plaintiff Snead was finally allowed to shower and was provided with clean clothes and bedding. She remained in custody until her release on May 30, 2017.

45. Plaintiff Snead, immediately after release, went to the ER, where she finally obtained the medical attention she had been refused by the Defendant. Due to the infectious nature of scabies, the infestation nonetheless spread throughout her home, which Plaintiff was required to vacate in order to eradicate the infestation. Plaintiff has incurred hundreds of dollars in expensive medication costs, expenses for alternative housing at a hotel, and additional expenses in the cost of fumigating and remediating the infestation from the furniture, linens, and other items within her home.

46. Plaintiff Snead and Ms. King both have permanent scarring, and are still recovering from the sores left from the parasites. They have been unable to return to work after their release due to the risk of spreading the mite to others, and have therefore incurred lost wages.

47. Despite actual knowledge of the infestation among the prisoner population, and the intensely contagious nature of it, the Defendant failed to take reasonable steps to mitigate the infestation, to quarantine inmates, or to treat those afflicted with a known scabies infestation.

48. The spread of the infestation was reasonably foreseeable and the Defendant failed to take reasonable steps to mitigate the infestation. As a direct and proximate result of the Defendant's acts and omissions, the Plaintiff and class members became infested.

49. By virtue of the scabies infestation, Plaintiff and the class members were forced to endure painful, itching rashes and sleeplessness while they were housed at the facility. After their release, they were forced to be quarantined, to be absent from work, to miss important family functions and event, during the time they were quarantined and recovering from the infestation. They have incurred the costs of medical treatment, which is ongoing. The scabies mites have spread within their homes, to their children and other family members.

50. Plaintiff have incurred additional expenses for cleaning supplies and professional cleaning services to mitigate and remediate the scabies infestations in their home.

51. Plaintiff have experienced and continue to experience pain, suffering and emotional distress and humiliation from the scabies infestations within their bodies and their homes.

## ADMINISTRATIVE PREREQUISITES

52. Upon her arrival at the Defendant's facility, Plaintiff was never provided with a copy of the Defendant's policies and procedures manual or any other document explaining the grievance process or any other administrative procedure. Plaintiff was made to sign a document stating that she received a handbook, even though none was provided.

53. Plaintiff Snead complained that she never received a handbook and that the Defendant's rules were unclear. No handbooks were provided to any other inmate. No copies were available at the prison library.

54. During her confinement, Plaintiff learned how to file a grievance and to request a sick call by speaking with other inmates, who had also learned by way of mouth. By filing the

11

grievances, Plaintiff complied with all requirements of the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA") and had exhausted her administrative remedies. Plaintiff's numerous grievances were deliberately ignored by the Defendant, and she therefore had no ability to appeal any decision, none having been made by the Defendant.

55.    Plaintiff and other class members were threatened from making any complaints or filing any grievance, which threats included being placed in solitary confinement, deprivation of food, clean clothes, bedding, and the ability to bathe, as well as the loss of phone privileges. To the extent that individuals did not file grievances because of the Defendant's express threats of retaliation, and actual retaliation to Plaintiff and others, the administrative process was unavailable.

56.    Because the Defendant's conduct indefinitely delayed and nullified any administrative process, the administrative remedies required of the PLRA were unavailable to Plaintiff and other class members.

57.    To the extent that administrative remedies remain unexhausted for those still housed at the facility, those Plaintiffs are entitled to injunctive relief while they continue to exhaust administrative grievance procedures.

58.    The PLRA is inapplicable to Plaintiff and those class members who are no longer confined in the Defendant's facility.

## CAUSES OF ACTION

**COUNT I:  DELIBERATE INDIFFERENCE TO PLAINTIFFS' SERIOUS MEDICAL NEEDS
IN VIOLATION OF PLAINTIFFS' RIGHTS GUARANTEED BY THE
EIGHTH AND FOURTEENTH AMENDMENTS TO THE U.S. CONSTITUTION**

**[42 U.S.C. § 1983]**

59.   The Defendant is a private entity that contracts to perform traditional state function of operating a prison, and the Defendant's employees performed governmental functions. The Defendant's officials therefore acted under color of law.

60.   The Defendant's official policies and customs of ignoring and/or substantially delaying requests for medical treatment caused the violation of the Plaintiffs' constitutionally protected rights.

61.   Plaintiff's infestation with scabies constituted a sufficiently serious medical need for treatment.  Plaintiffs were confined under conditions posing a substantial risk of serious harm.

62.   Due to the extremely contagious nature of scabies infestations, the failure to promptly treat scabies posed an obvious and substantial risk of harm to other inmates.

63.   Dozens of grievances and requests for medical attention were filed by Plaintiff and members of the class and submitted to prison officials, all of which were ignored.  The officials knew there was a substantial risk of serious harm to Plaintiffs and members of the class, but failed to act.

64.   Despite the numerous pleas for medical assistance, the Defendant did not even summon a medical professional to examine Plaintiff or members of the class.

65.   Prison officials, including the Warden and Assistant Warden, the prison guards, and nursing staff, all had actual and/or constructive knowledge of a widespread scabies

13

infestation spreading throughout the Defendant's facility. These officials had knowledge of the Plaintiffs' asserted serious needs, or were aware of the circumstances clearly indicating the existence of such needs, or subjectively perceived a risk of harm, but then disregarded it by failing to take reasonable measures to abate it.

66. Plaintiff Snead's medical need was diagnosed by a physician as mandating treatment, which was subsequently ignored by the Defendant. The Defendant refused to provide Plaintiff with her prescription medication and retaliated against her for seeking outside medical treatment.

67. The need to treat scabies is obvious even to a layperson. The condition visibly spread to more areas on the body of infested inmates. It is apparent that a delay in treating a scabies infestation would detrimentally exacerbate the medical problem.

68. The medical conditions of Plaintiff Snead and members of the class worsened as a result of the Defendant's refusal to provide medical services.

69. Because of the Defendant's continued, deliberate indifference to Plaintiffs' medical needs, the inhumane conditions of confinement constituted cruel and unusual punishment within the meaning of the Eighth Amendment.

70. The pattern and practice of ignoring all inmate complaints was the product of the policies and customs of the Defendant.

71. The prolonged deprivation of medical treatment was serious and addressed the specific, basic human need for medical treatment and access to medical treatment. The deprivation to Plaintiff and members of the class was sufficiently severe to constitute inhumane prison conditions.

14

72. The Defendant acted with malice when it retaliated and disciplined Plaintiff and class members for exercising their right to demand medical treatment.

73. As a result of the Defendants' actions, Plaintiffs were deprived of fundamental rights guaranteed by the United States Constitution, including the right to adequate medical care for their serious medical needs while in the custody of the state. The Defendant's actions described herein violated the Eighth Amendment's prohibition against cruel and unusual punishment, and the Fourteenth Amendment's guarantee of substantive due process.

74. As a direct and foreseeable result of the Defendant's violations of Plaintiffs' rights, Plaintiffs have suffered and will continue to suffer physical injury and scarring, the nature of which is permanent.

**COUNT II: Violation of Plaintiffs' Rights to Due Process for**

**Failure to Protect and Exposure to State Created Danger**

75. Plaintiff and members of the class were involuntarily confined or restrained against their will pursuant to a governmental order or by the affirmative exercise of state power by the Defendant.

76. By virtue of the special relationship of the state-imposed custodial setting, the Defendant was under an affirmative obligation to spend its resources to protect Plaintiff and members of the class from harm.

77. The Defendant had exclusive control over the movement and placement of inmates in its custody. The Defendant knowingly and intentionally transferred infested inmates into the crowded cells of healthy inmates, placing them in close proximity to a dangerous contagion. Plaintiff and the class members had no ability to transfer away from infested inmates.

15

78.    The Defendant's failure and refusal to treat the scabies infestation allowed it to spread to new hosts and caused the infestation to intensify and spread. The Defendant therefore was the primary cause of the dangers to which Plaintiff was exposed and increased the vulnerability of Plaintiffs to these dangers.

79.    The Defendant, having created the danger confronting the Plaintiff, owed a corresponding duty to protect Plaintiff by isolating those infested with scabies and to immediately treat them.

80.    The Defendant's failure and refusal to acknowledge or respond to the scabies infestation deprived Plaintiff and members of the class of their rights to due process, guaranteed by the Fourteenth Amendment to the U.S. Constitution.

### COUNT III:  Failure to Train

### [42 U.S.C. § 1983]

81.    The Defendant failed and refused to train its employees upon the proper methods and means to detect, prevent, and treat scabies infections within its facility. The incidents of infestation were prevalent, involving dozens of inmates.  Notice from Plaintiff's dermatologist that she had scabies was alone sufficient to alert the Defendant of a genuine danger.

82.    The Defendant's refusal to acknowledge the infestation, when confronted with dozens, if not hundreds of medical requests and grievances, is indicative of a profound lack of understanding, and is evidence of a failure to train.

## CLASS ACTION

83. Plaintiffs seek class certification of all claims pursuant to Fed.R.Civ.P. 23. The Defendant has acted or refused to act on grounds that apply generally to the class, so that the claims for damages and for final injunctive relief is appropriate respecting the class as a whole.

84. The class is defined as all female inmates exposed to and infested with scabies, who are, who have been, or who in the future may become, housed at the Defendant's facility in Davidson County.

85. The number of persons whose rights have been similarly violated by the Defendant are too numerous to join in this action. The Plaintiff class members are readily identifiable using records maintained in the regular course of business by Defendant.

86. The questions of law described in this Complaint and the facts regarding them are common to all persons who were exposed and subsequently contracted scabies because of the acts of the Defendant.

87. One common question is whether the Defendant has a policy or practice of refusing to provide Plaintiffs with medical care and retaliating against them when they seek outside medical care.

88. Another common question is whether the Defendant fails to train its employees adequately in regard to the medical needs of inmates infested with scabies, in deliberate indifference to the obvious need for such training, and whether it maintains its lack of training in deliberate indifference to the serious medical needs of its inmates infested with scabies.

89. The claims of the Plaintiff are typical of claims of this class, as their claims arise from the same policies, practices, acts, and omissions as those of the Plaintiff class. The named Plaintiffs' claims are based on the same theory as the claims of the respective class.

17

90. Plaintiff has been injured as a result of the Defendant's actions addressed in this lawsuit in the same way as the other members of the proposed class.

91. The Plaintiff will fairly and adequately protect the interests of the class. The named Plaintiff does not have any interests antagonistic to the interests of the class.

92. By way of this lawsuit, the named Plaintiff, on behalf of the proposed class, seeks in part to enjoin and restrain the unlawful acts and omissions of the Defendant.

93. The prosecution of separate claims would create a risk of inconsistent adjudications among members of the proposed class, and might establish inconsistent standards of conduct up the Defendant.

94. Adjudications with respect to individual members of the class would as a practical matter be dispositive of the interests of other members not parties to the adjudication, and might substantially impair or impede their ability to protect their interests.

95. The interests of Plaintiff as a class representative are identical to the interest of each class member.

**INJUNCTIVE RELIEF**

96. The class members who are currently incarcerated have no plain, adequate or complete remedy at law to redress the wrongs alleged herein, and injunctive relief sought herein is their only means of securing adequate relief.

97. The class members are now suffering, and will continue to suffer, irreparable injury from Defendants' unlawful conduct as set forth herein, unless enjoined by this Court.

98. Plaintiff class members seek a permanent injunction enjoining the Defendant, its agents, employees, and all those acting in concert with the Defendant under color of state law, from continuing to violate the Eighth and Fourteenth Amendments of the U.S. Constitution

18

and to immediately cease intimidating, threatening, and retaliating against inmates for demanding medical care for their serious medical needs and to immediately provide adequate oral and topical medication sufficient to fully treat all those diagnosed with scabies.

99. Plaintiff class members seek a permanent injunction requiring the Defendant to provide a full medical staff adequate to meet the needs of those infested with scabies and capable of dispensing medication and monitoring their treatment until completion.

## DAMAGES

100. Plaintiff brings this suit for all damages recoverable by law including, without limitation, damages for personal injury, for pain and suffering caused in the past and future, for loss of enjoyment of life past and future, for lost wages, for impairment of the Plaintiff's capacity to earn income, and for all medical expenses which are reasonable and necessary and made necessary by the acts and omissions of the Defendant.

101. In addition, because of the reckless and intentional conduct of the Defendant, Plaintiff and each member of the class are entitled to punitive damages.

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, pray for judgment as follows:

1. That process issue to the Defendant to plead or respond in the time provided by law;

2. That the Court determine, as soon as practicable, and consistent with the requirements of Fed. R. Civ. P. 23, by order that Plaintiff's proposed class action may be maintained, and provide notice as may be appropriate pursuant to Rule 23;

3. That the Court upon final hearing declare and find that the defendant was deliberately indifferent to the health and safety of the Plaintiff class members;

19

4.  That Plaintiff class members be awarded a judgment against the Defendant for all damages available under Tennessee and federal law as will fully compensate the Plaintiff class members for all injuries caused by the Defendant's actions and failure to act, as alleged herein;

5.  That Plaintiff class members be awarded punitive damages for the Defendant's fraudulent, intentional, reckless, and malicious conduct;

6.  That this Court find that the policies, practices, procedures, conditions and customs of the Defendants are violative of the rights of Plaintiff class members as secured by the Eighth and Fourteenth Amendments of the U.S. Constitution.

7.  That Plaintiff class members be awarded the costs of bringing this suit, including reasonable attorney's fees and litigation expense pursuant to 42 U.S.C. § 1988 and applicable law;

8.  That Plaintiffs and the other Members of the Class be awarded such general relief to which they may be entitled, at law or in equity.

Respectfully submitted,

THE BLACKBURN FIRM, PLLC


_____
W. Gary Blackburn (#3484)
Bryant Kroll (#33394)
213 Fifth Avenue North, Suite 300
Nashville, TN 37219
P: (615) 254-7770
F: (866) 895-7272
gblackburn@wgaryblackburn.com
bkroll@wgaryblackburn.com

20

Jeffery S. Roberts, #20263
JEFF ROBERTS & ASSOCIATES, PLLC
213 Fifth Avenue North, Suite 300
Nashville, TN 37219
P: (615) 425-4400
F: (615) 425-4401
Jeff@middletninjury.com

R. Joshua McKee
THE MCKEE LAW FIRM
213 Fifth Avenue North, Suite 300
Nashville, TN 37219
P: (615) 425-4400
F: (615) 425-4401
rjm@rjmckeelaw.com

*Attorneys for Plaintiffs*