UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| WENDY SNEAD, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action Number 3:17-CV-949 District Judge Aleta A. Trauger |
| CORECIVIC OF TENNESSEE, LLC f/k/a CORRECTIONS CORPORATION OF AMERICA, | ) ) ) ) | Magistrate Judge Joe B. Brown Jury Demand |
| Defendant. | ) | |

# ANSWER

Pursuant to Federal Rules of Civil Procedure 8 and 12, Defendant CoreCivic of Tennessee, LLC ("CoreCivic") answers the allegations of the Complaint filed by Plaintiff Wendy Snead ("Snead") in this action as follows:

## FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE
### (Answer to Complaint, Docket Entry 1)

As to each allegation in the Complaint, CoreCivic responds as follows:

1. CoreCivic admits that CoreCivic, Inc. previously was known as Corrections Corporation of America, that CoreCivic, Inc. operates the Metro-Davidson County Detention Facility ("Detention Facility"), that the Detention Facility is located in Davidson County, Tennessee, and that the inmates who are incarcerated at the Detention Facility receive medical

treatment. CoreCivic denies the remaining allegations in paragraph 1 of the Complaint and all allegations of wrongdoing.

2. CoreCivic denies the allegations in paragraph 2 of the Complaint and all allegations of wrongdoing.

3. Paragraph 3 of the Complaint contains allegations regarding medical conditions or opinions which require no response. Nevertheless, and to the extent a response is required, CoreCivic denies the allegations in paragraph 3 of the Complaint and all allegations of wrongdoing.

4. CoreCivic admits that it operates the Detention Facility and that inmates are incarcerated in the Detention Facility. CoreCivic denies the remaining allegations in paragraph 4 of the Complaint and all allegations of wrongdoing.

5. CoreCivic admits that Snead was incarcerated at the Detention Facility. CoreCivic lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 5 of the Complaint.

6. CoreCivic admits that it is a limited liability company, that it is organized under the laws of the State of Tennessee, that its principal place of business is located at 10 Burton Hills Boulevard, Nashville, Tennessee 37215, that its registered agent for service of process is CT Corporation System, 800 South Gay Street, Suite 2021, Knoxville, Tennessee 37929, that it operates the Detention Facility, and that it houses prisoners of the State of Tennessee. The allegation in paragraph 6 of the Complaint that CoreCivic performs a public function that traditionally is reserved to the state is a legal conclusion to which no response is required. CoreCivic denies the remaining allegations in paragraph 6 of the Complaint.

7. CoreCivic denies the allegations in paragraph 7 of the Complaint and all allegations of wrongdoing.

8. CoreCivic admits that 28 U.S.C. § 1331 and 28 U.S.C. § 1343 confer federal-question jurisdiction upon this Court.

9. CoreCivic admits that this Court has supplemental jurisdiction over Snead's state law claims pursuant to 28 U.S.C. § 1367.

10. CoreCivic admits that 28 U.S.C. § 1391 renders venue proper in this Court.

11. CoreCivic denies the allegations in paragraph 11 of the Complaint and all allegations of wrongdoing.

12. CoreCivic admits that CoreCivic, Inc. operates the Detention Facility, that the Detention Facility is located at 5115 Harding Place, Nashville, Tennessee 37211, and that the Detention Facility has an inmate capacity of 1,348. CoreCivic denies the remaining allegations in paragraph 12 of the Complaint and all allegations of wrongdoing.

13. Paragraph 13 of the Complaint contains allegations regarding medical conditions or opinions which require no response. Nevertheless, and to the extent a response is required, CoreCivic denies the allegations in paragraph 13 of the Complaint and all allegations of wrongdoing.

14. CoreCivic admits that Jennifer King ("King") was incarcerated at the Detention Facility on December 13, 2016, that King was incarcerated at the Detention Facility both as a pretrial detainee and as a convicted inmate, that King was housed in Unit Delta 2 from December 14, 2016 through January 7, 2017, and that King was housed in Unit Echo 1 from January 12, 2017 through January 16, 2017, from January 17, 2017 through February 14, 2017, and from February 21, 2017 through May 4, 2017. CoreCivic cannot respond to allegations in paragraph

14 of the Complaint regarding King's medical condition pursuant to the Health Insurance Portability and Accountability Act ("HIPAA") and T.C.A. § 10-7-504(a)(1). CoreCivic denies the remaining allegations in paragraph 14 of the Complaint and all allegations of wrongdoing.

15. CoreCivic admits that it houses pretrial detainees and convicted inmates and that there is no distinction in the conditions of their confinement.

16-17. CoreCivic admits that King spoke with CoreCivic employees during her incarceration at the Detention Facility. CoreCivic cannot respond to allegations in paragraphs 16 through 17 of the Complaint regarding King's medical condition pursuant to HIPAA and T.C.A. § 10-7-504(a)(1). CoreCivic denies the remaining allegations in paragraphs 16 through 17 of the Complaint and all allegations of wrongdoing.

18. CoreCivic admits that Snead was charged with driving under the influence, that Snead was incarcerated at the Detention Facility from January 2, 2017 through May 30, 2017, and that Snead was housed in Unit Alpha 1 from January 24, 2017 through May 19, 2017. CoreCivic denies that Snead was incarcerated in Unit Alpha 1 during the entirety of her incarceration at the Detention Facility. CoreCivic lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 18 of the Complaint.

19. CoreCivic admits that King was housed in Unit Alpha 1 from February 14, 2017 through February 21, 2017 and from May 4, 2017 through May 11, 2017, and that there was not a scabies infestation in Unit Alpha 1. CoreCivic cannot respond to allegations in paragraph 19 of the Complaint regarding King's medical condition pursuant to HIPAA and T.C.A. § 10-7-504(a)(1). CoreCivic denies the remaining allegations in paragraph 19 of the Complaint and all allegations of wrongdoing.

20. CoreCivic lacks knowledge or information sufficient to admit or deny the allegations in paragraph 20 of the Complaint that an unidentified inmate in Unit Alpha attended nursing school or that an unidentified inmate in Unit Alpha complained to an unidentified employee of CoreCivic. CoreCivic denies the remaining allegations in paragraph 20 of the Complaint and all allegations of wrongdoing.

21. CoreCivic admits that King was housed in an eight-person cell during a portion of her incarceration at the Detention Facility. CoreCivic denies the remaining allegations in paragraph 21 of the Complaint and all allegations of wrongdoing.

22. CoreCivic lacks knowledge or information sufficient to admit or deny the allegation in paragraph 22 of the Complaint that an unidentified inmate refused to go into the same room as King. CoreCivic denies the remaining allegations in paragraph 22 of the Complaint and all allegations of wrongdoing.

23. CoreCivic lacks knowledge or information sufficient to admit or deny the allegations in paragraph 23 of the Complaint that an unidentified employee of CoreCivic conducted an Internet search or that an unidentified employee of CoreCivic made a statement regarding the condition of unidentified inmates. CoreCivic denies the remaining allegations in paragraph 23 of the Complaint and all allegations of wrongdoing.

24. CoreCivic admits that some inmates discussed scabies during their respective incarcerations at the Detention Facility. CoreCivic denies the remaining allegations in paragraph 24 of the Complaint and all allegations of wrongdoing.

25. CoreCivic lacks knowledge or information sufficient to admit or deny the allegation in paragraph 25 of the Complaint that unidentified inmates had telephone

conversations with their family members. CoreCivic denies the remaining allegations in paragraph 25 of the Complaint and all allegations of wrongdoing.

26. CoreCivic lacks knowledge or information sufficient to admit or deny the allegations in paragraph 26 of the Complaint. Nevertheless, CoreCivic denies all allegations of wrongdoing.

27-29. CoreCivic denies the allegations in paragraphs 27 through 29 of the Complaint and all allegations of wrongdoing.

30. CoreCivic lacks knowledge or information sufficient to admit or deny the allegation in paragraph 30 of the Complaint that unidentified inmates promised to file grievances during their respective incarcerations at the Detention Facility. CoreCivic denies the remaining allegations in paragraph 30 of the Complaint and all allegations of wrongdoing.

31. CoreCivic lacks knowledge or information sufficient to admit or deny the allegation in paragraph 31 of the Complaint that Snead experienced itching on May 12, 2017. CoreCivic denies the remaining allegations in paragraph 31 of the Complaint and all allegations of wrongdoing.

32. CoreCivic lacks knowledge or information sufficient to admit or deny the allegation in paragraph 32 of the Complaint that on May 13, 2017, Snead experienced difficulty sleeping. CoreCivic denies the remaining allegations in paragraph 32 of the Complaint and all allegations of wrongdoing.

33. CoreCivic lacks knowledge or information sufficient to admit or deny the allegation in paragraph 33 of the Complaint that Snead experienced itching and difficulty sleeping. CoreCivic denies the remaining allegations in paragraph 33 of the Complaint and all allegations of wrongdoing.

34. CoreCivic admits that an individual identified as Snead's child visited her on May 14, 2017, at the Detention Facility and that May 14, 2017, was Mother's Day. CoreCivic denies the remaining allegations in paragraph 34 of the Complaint and all allegations of wrongdoing.

35. CoreCivic admits that the Detention Facility was placed on lockdown for a semi-annual facility shakedown that was conducted on May 15, 16, and 17, 2017. CoreCivic denies the remaining allegations in paragraph 35 of the Complaint and all allegations of wrongdoing.

36. CoreCivic admits that Snead placed a telephone call on May 17, 2017. CoreCivic lacks knowledge or information sufficient to admit or deny the remaining allegations in paragraph 36 of the Complaint. CoreCivic denies all allegations of wrongdoing.

37. CoreCivic admits that a medical provider evaluated Snead on May 18, 2017. CoreCivic lacks knowledge or information sufficient to admit or deny the allegation in paragraph 37 of the Complaint that Snead's family communicated with the Metro Public Health Department. CoreCivic denies the remaining allegations in paragraph 37 of the Complaint and all allegations of wrongdoing.

38. CoreCivic admits that Snead was transported to an offsite medical appointment on May 19, 2017. CoreCivic lacks knowledge or information sufficient to admit or deny the allegations in paragraph 38 of the Complaint regarding the actions of Snead's dermatologist. Core Civic denies the remaining allegations in paragraph 38 of the Complaint and all allegations of wrongdoing.

39. CoreCivic denies the allegations in paragraph 39 of the Complaint and all allegations of wrongdoing.

40. CoreCivic admits that a transcript excerpt is attached as Exhibit A to the Complaint. CoreCivic denies all allegations of wrongdoing.

41. CoreCivic admits that King was released from the Detention Facility on May 21, 2017. CoreCivic lacks knowledge or information sufficient to admit or deny the allegations in paragraph 41 of the Complaint regarding what King did following her release from the Detention Facility. CoreCivic denies the remaining allegations in paragraph 41 of the Complaint and all allegations of wrongdoing.

42. CoreCivic admits that Snead was given Ivermectin on May 20, 2017 and on May 29, 2017. CoreCivic denies the remaining allegations in paragraph 42 of the Complaint and all allegations of wrongdoing.

43. CoreCivic denies the allegations in paragraph 43 of the Complaint and all allegations of wrongdoing.

44. CoreCivic admits that Snead was provided access to a shower and clean clothes and bedding during her incarceration at the Detention Facility and that Snead was released from the Detention Facility on May 30, 2017. CoreCivic denies the remaining allegations in paragraph 44 of the Complaint and all allegations of wrongdoing.

45. CoreCivic lacks knowledge or information sufficient to admit or deny the allegation in paragraph 45 of the Complaint regarding medical treatment that Snead received following her release from the Detention Facility. CoreCivic denies the remaining allegations in paragraph 45 of the Complaint and all allegations of wrongdoing.

46-53. CoreCivic denies the allegations in paragraphs 46 through 53 of the Complaint and all allegations of wrongdoing.

54. CoreCivic lacks knowledge or information sufficient to admit or deny the allegations in paragraph 54 of the Complaint that Snead had conversations with other inmates

incarcerated at the Detention Facility. CoreCivic denies the remaining allegations in paragraph 54 of the Complaint and all allegations of wrongdoing.

55-57. CoreCivic denies the allegations in paragraphs 55 through 57 of the Complaint and all allegations of wrongdoing.

58-59. The allegations in paragraphs 58 through 59 of the Complaint are legal conclusions to which no response is required.

60-74. CoreCivic denies the allegations in paragraphs 60 through 74 of the Complaint and all allegations of wrongdoing.

75. CoreCivic admits that Snead was incarcerated at the Detention Facility. The remaining allegations in paragraph 75 of the Complaint are legal conclusions to which no response is required.

76. The allegations in paragraph 76 of the Complaint are legal conclusions to which no response is required.

77. CoreCivic admits that it had responsibility for the movement and placement of inmates incarcerated at the Detention Facility. CoreCivic denies the remaining allegations in paragraph 77 of the Complaint and all allegations of wrongdoing.

78-98. CoreCivic denies the allegations in paragraphs 78 through 98 of the Complaint and all allegations of wrongdoing.

99-101. CoreCivic denies that Snead is entitled to the damages and relief that she seeks in paragraphs 99 through 101 of the Complaint and all allegations of wrongdoing.

All allegations not previously admitted hereby are denied.

### THIRD DEFENSE

Snead failed to exhaust her administrative remedies, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e.

### FOURTH DEFENSE

All or part of Snead's claims fail to rise to the level of constitutional violations sufficient to state a claim pursuant to 42 U.S.C. § 1983 ("Section 1983").

### FIFTH DEFENSE

Snead's claims against CoreCivic brought pursuant to Section 1983 fail to state a claim upon which relief can be granted because Snead cannot hold CoreCivic liable for the alleged constitutional violations of others on a *respondeat-superior* theory of liability.

### SIXTH DEFENSE

Snead's claims against CoreCivic brought pursuant to Section 1983 cannot stand because Snead did not suffer a physical injury that is more than *de minimis*.

### SEVENTH DEFENSE

Snead's claims sound in medical malpractice, and Snead failed to comply with T.C.A. § 29-26-121 or T.C.A. § 29-26-122.

### EIGHTH DEFENSE

Any procedural due process claim that Snead is attempting to assert cannot stand because Snead cannot establish the elements of a procedural due process claim, including that she had a life, liberty, or property interest protected by the Due Process Clause, that CoreCivic deprived her of any protected interest, and that CoreCivic did not afford her adequate procedural rights prior to depriving her of the property interest.

## NINTH DEFENSE

Any substantive due process claim that Snead is attempting to assert cannot stand because she cannot establish the elements of a substantive due process claim, including that she has a protected property interest, that CoreCivic denied her of an immunity, right, or privilege secured by the United States Constitution or a federal statute, or that CoreCivic's conduct shocks the conscience.

## TENTH DEFENSE

Any substantive due process claim that Snead is attempting to assert cannot stand because when a particular constitutional amendment provides an explicit textual source of constitutional protection against a particular sort of alleged conduct, that constitutional amendment and not the more generalized notion of substantive due process governs.

## ELEVENTH DEFENSE

The request for injunctive relief is moot because Snead is not incarcerated at the Detention Facility.

## TWELFTH DEFENSE

Snead is barred from proceeding with this action as a class action pursuant to Federal Rule of Civil Procedure 23 because the class definition is overbroad.

## THIRTEENTH DEFENSE

Snead is barred from proceeding with this action as a class action pursuant to Federal Rule of Civil Procedure 23 because the class definition contains no temporal restriction.

## FOURTEENTH DEFENSE

Snead is barred from proceeding with this action as a class action pursuant to Federal Rule of Civil Procedure 23 because the individual issues of law and fact affecting Snead lack commonality to the questions of law and fact affecting all putative class members.

## FIFTEENTH DEFENSE

Snead is barred from proceeding with this action as a class action pursuant to Federal Rule of Civil Procedure 23 because her claims are not typical of the claims of the members of the putative class.

## SIXTEENTH DEFENSE

Snead is barred from proceeding with this action as a class action pursuant to Federal Rule of Civil Procedure 23 because Snead will not fairly or adequately protect the interest of putative class members.

## SEVENTEENTH DEFENSE

Snead is barred from proceeding with this action as a class action pursuant to Federal Rule of Civil Procedure 23 because: (1) there is no risk of inconsistent or varying adjudications with respect to individual putative class members that would establish incompatible standards of conduct by CoreCivic; and (2) adjudications with respect to Snead or as to any individual member of the putative class would not be dispositive of the interests of the other members of the putative class and would not substantially impair of impede the ability of the other members of the putative class to protect their individual interests.

## EIGHTEENTH DEFENSE

Snead is barred from proceeding with this action as a class action pursuant to Federal Rule of Civil Procedure 23 because CoreCivic neither has acted nor refused to act on grounds

12
Case 3:17-cv-00949   Document 10   Filed 07/13/17   Page 12 of 14 PageID #: 58

that apply generally to the class, and, thus, the requested injunctive relief is inappropriate with respect to the class as a whole.

## NINETEENTH DEFENSE

CoreCivic's liability for punitive damages, if any, is limited by the Due Process Clause of the United States Constitution.

CoreCivic demands a jury to try this cause.

Respectfully submitted,

/s/ Erin Palmer Polly
Joseph F. Welborn, III (#15076)
Erin Palmer Polly (#22221)
Jason W. Callen (#26225)
Paige Ayres Nutini (#34133)
Butler Snow LLP
The Pinnacle at Symphony Place
150 Third Avenue, South
Nashville, Tennessee 37201
(615) 651-6700
(615) 651-6701

*Counsel for Defendant CoreCivic, Inc.*

## CERTIFICATE OF SERVICE

  I certify that a true and exact copy of the foregoing has been served upon Filing Users via the electronic filing system and on other counsel via U. S. Mail, first-class postage prepaid, this July 13, 2017, on the following:

| | |
|---|---|
| W. Gary Blackburn | Jeffery S. Roberts |
| Bryant Kroll | Jeff Rogers & Associates, PLLC |
| The Blackburn Firm, PLLC | 213 Fifth Avenue North, Suite 300 |
| 213 Fifth Avenue North, Suite 300 | Nashville, Tennessee 37219 |
| Nashville, Tennessee 37219 | |

R. Joshua McKee
The McKee Law Firm
213 Fifth Avenue North, Suite 300
Nashville, Tennessee 37219

                    /s/ Erin Palmer Polly

37224851v2