# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

| | |
|---|---|
| **WENDY SNEAD, and EDWARD MOREDOCK, individually and on behalf of all others similarly situated,** ) ) ) | **Civil Action No. 3:17-cv-00949 (Consolidated with: 3:17-cv-00958)** |
| **Plaintiffs.** ) ) | **CLASS ACTION** |
| **v.** ) ) | **Judge Trauger** |
| **CORECIVIC OF TENNESSEE, LLC f/k/a CORRECTIONS CORPORATION OF AMERICA** ) ) ) ) | **Magistrate Judge Brown** |
| **Defendant.** ) ) | |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Pursuant to Rules 23(a), 23(b)(1), 23(b)(2), and 23(b)(3) of the Federal Rule of Civil Procedure and Local Rule 23.01, Plaintiffs hereby move to certify the following three classes of current and former inmates: The Scabies Class, the Denied Prescription Class, and the Denied Medical Access Class.

The Scabies Class is defined as all current and former inmates who had a rash consistent with a scabies infestation who were denied treatment, or whose delayed treatment by the Defendant caused the inmate's condition to worsen, since October 1, 2016.

The Denied Prescription Class is defined as all current and former inmates who were prescribed medication that was not administered as prescribed, or whose prescribed plan of treatment was interrupted or delayed by the Defendant, since October 1, 2016.

The Denied Medical Access Class is defined as all current and former inmates who requested, but were denied medical attention, since October 1, 2016.

Case 3:17-cv-00949   Document 20   Filed 12/20/17   Page 1 of 23 PageID #: 153

# I. SUMMARY OF THE FACTS

The Defendant houses pretrial detainees with other inmates serving sentences in a 1,348-bed jail facility located at 5115 Harding Place, Nashville, TN 37211. There is no distinction in the conditions of confinement between pretrial detainees and inmates. [Dkt. No. 15, ¶ 11]. The allegations in the Complaint demonstrate that the Defendant refused to provide the healthcare needed and requested by Plaintiffs and members of the proposed classes. The Defendant repeatedly failed and/or refused to provide inmates with access to doctors and/or necessary medication. [Dkt. No. 15, ¶ 12].

## A. On a Class-Wide Basis, Inmates Have Been Denied Access to Medical Care and Prescribed Medication.

Because of the Defendant's deliberate indifference to the medical needs of inmates and pretrial detainees, a scabies outbreak occurred within the Defendant's facility. [Dkt. No. 15, ¶ 14]. The Defendant is obligated by contract to respond to sick call requests within 24 hours or less, yet it intentionally and repeatedly fails to do so. [Dkt. No. 15, ¶ 13(a)]. It takes two weeks to one month for inmates to be seen by a nurse, with referrals to doctors taking months. *Id.*

The Defendant is well aware of the risk of infectious diseases spreading through its facility. It is obligated by contract to hire staff in charge of infection control, but has failed to hire anybody in this position for at least one, and possibly up to four (4) years. *Id.* The Defendant is obligated by contract to review the medical records of inmates transferred to its facility who have special health care needs, but fails and refuses to procure those records, despite actual knowledge of their necessity. *Id.*

The Defendant does not utilize any procedure for screening inmates for mites or other parasites during intake. *Id.*

Between January and August of 2017, the mental health physician was absent for at least a month and apparently walked off the job, during which time no mental health patients were prescribed any medication. *Id.*

The Defendant routinely runs out of mental health medications, and often fails to refill those prescriptions for weeks, posing serious risks to inmates due to the abrupt cessation of required medication. A male inmate was out of the mental health drug Gabapentin, but the Defendant falsified his medical chart to state that he was receiving it. *Id.*

The pharmacy nurse was absent from work for two to three weeks, starting on or about Memorial Day through at least June 9, 2017, during which time no medications were ordered or reordered. The Defendant has failed and/or refused to train other staff on the procedures for ordering medication, despite the obvious result that medications would not be ordered in the event of the pharmacy nurse's absence. Every day, numerous inmates go without receiving one or more of their medications. *Id.*

Many inmates require medication such as Clonidine to treat high blood pressure. The Defendant is required to keep such medications in stock, but has gone without it, sometimes for up to a week. The Defendant is well aware that missed dosages of blood pressure medication greatly increase the risk of heart attack, stroke, heart failure, and kidney failure. *Id.*

The Defendant does not keep inmate medications in alphabetical order. The Defendant's resulting inability to find medications often results in inmates not receiving them. *Id.*

The Defendant is aware that medical emergencies have been called in and that employees are not responding. *Id.*

The Defendant routinely fails to give the majority of a pod or entire pods their medications during pill call. Warden Peterson was made aware of this situation, and was told that inmates have

3

repeatedly reported this to nursing staff. Thereafter, the Defendant refused to allow inmates to speak with nurses during pill call, and inmates are no longer given copies of their sick call requests. *Id.*

The Defendant fails to announce pill calls in a manner in which inmates can hear it. Nurses are no longer allowed to travel to the pods to provide inmates their medication. If an inmate misses a pill call, whether because they are in the Rec Room, attending education classes, or using the lavatory, there is no way for them to receive their medication. *Id.*

Personnel without medical licensure are refusing to comply with a doctor's orders and/or to fill prescriptions as written. The Defendant's Health Services Administrator ("HSA") instructs nurses to call the doctor and inform him that they are not going to fill the prescription as written. Doctors have prescribed medication required to be administered four (4) times a day, but the medication is intentionally only administered twice a day, contrary to the doctor's orders. *Id.*

A male inmate was prescribed breathing treatments twice a day, but went days without receiving it. After nursing staff repeatedly brought this to the Defendant's attention, the HSA said, "This is becoming quite a habit, isn't it?" *Id.*

The HSA, who is not a licensed medical provider, has instructed medical staff to refuse to prescribe medication, including Ivermectin used to treat scabies, and instead to provide cheaper, over-the-counter products such as Benadryl, which would only mask symptoms without actual treatment of the underlying cause. *Id.*

Numerous inmates are authorized for prescriptions that are designated as Keep On Person ("KOP"). However, if they are taken to segregation, their medications are taken from them, and the Defendant's medical staff routinely fails to confirm that inmates receive their medication. When KOP medications are exhausted, inmates will go days or weeks without refills. *Id.*

4

A significant amount of medication is routinely "lost" by the Defendant's staff. When medications for one inmate runs out, they will take it from another, resulting in confusion and the denial of prescription refills because the time to refill the inmate's prescription has not yet arrived. The mishandling of medication includes narcotics. One inmate reported to the Defendant that insulin from a used syringe was re-injected into the vial and that used lancets have been recapped and placed in the same container with new lancets, even after the inmate reported that they had a communicable disease. *Id.*

A handicapped male inmate requires the use of a colostomy bag, but the Defendant fails to provide him with sufficient replacement bags. He is therefore forced to rinse the bag out in the sink that is used by all of the inmates, or in the shower where they bathe. *Id.*

The Defendant has failed to provide inmates prescribed opioid medication for chronic cancer pain for weeks or months, leaving them to suffer. *Id.*

Instead of administering medication to inmates as prescribed, non-medical staff reduced the amount of medication against the doctor's orders, informing nursing staff that they did not have time to administer the medication, and that if they did, they "would have to do it for everyone." In response to an employee complaint about the procedure, the HSA stated that they should never administer medications more than twice a day, regardless of doctor's orders. *Id.*

Employees who have reported the lack of medical care for inmates and the lack of training for employees on internal procedures have been reprimanded, threatened with discipline, or intimidated. There is an overall failure to train nursing staff, including, without limitation, the proper procedures for pill call, sick calls, intake procedures, release of inmates, medical emergencies, and ordering or re-ordering medication, including emergency refills. *Id.*

5

When nurses fail to show up to work, the Defendant does not divide that nurse's assignment or delegate duties in order to ensure that inmates receive medical care. *Id.*

Despite scabies infestations being diagnosed by physicians for inmates, former inmates, and employees, the Defendant continues to deny that there is or ever was any infestation. The intentional misrepresentation of these infestations has contributed to its spread throughout the facility. Regardless of whether the skin rash spreading through the facility was scabies, treatment with actual medication is nonetheless required but has been consistently denied. Inmates with open sores are susceptible to Staph infections, which are life-threatening unless treated with medication. *Id.*

Inmate grievances and complaints regarding the lack of health care were ignored by the Defendant. The Defendant's policies impose a 72-hour limit on responding to an informal complaint, which is ignored. Grievances are not even presented to the staff member against whom the complaint was filed. *Id.*

## II.  CLASS DEFINITIONS

Plaintiffs have proposed three classes. Federal Rule of Civil Procedure 23(c)(5) provides that a class may be divided into subclasses that are each treated as a class. District Courts have broad discretion in determining whether to bifurcate proceedings or divide a class into subclasses. *Randleman v. Fid. Nat. Title Ins. Co.,* 646 F.3d 347, 355 (6th Cir. 2011)(citing *In re Ins. Brokerage Antitrust Litig.,* 579 F.3d 241, 271 (3d Cir.2009); *Williams v. Mohawk Indus., Inc.,* 568 F.3d 1350, 1355 (11th Cir.2009); *see also Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 559 (6th Cir. 2007)(noting the district court's discretion to certify a class in light of its inherent power to manage and control litigation)).

6

"Before a court may certify a class pursuant to Rule 23, 'the class definition must be sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member of the proposed class.'" *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537-38 (6th Cir. 2012)(citing Moore's Federal Practice § 23.21[1])).[1] "For a class to be sufficiently defined, the court must be able to resolve the question of whether class members are included or excluded from the class by reference to objective criteria. In some circumstances, a reference to damages or injuries caused by particular wrongful actions taken by the defendants will be sufficiently objective criterion for proper inclusion in a class definition. Similarly, a reference to fixed, geographic boundaries will generally be sufficiently objective for proper inclusion in a class definition." *Id.*

The damages or injuries to Plaintiffs and the proposed classes are caused by the particular wrongful actions taken by the Defendant. This case also involves current and former inmates housed at the Defendant's facility located at Harding Place, in Nashville, Tennessee, and the classes therefore stem from acts and omissions occurring within a "fixed, geographic" location.

The following classes are therefore sufficiently defined.

**1. The Scabies Class.**

The Scabies Class is defined as all current and former inmates who had a rash consistent with a scabies infestation who were denied treatment, or whose delayed treatment by the Defendant caused the inmate's condition to worsen, since October 1, 2016.

---

[1] In *Young*, the Sixth Circuit upheld the certification of a class of persons "who were charged local government taxes on their payment of premiums which were either not owed, or were at rates higher than permitted." *Young*, 693 F.3d 532, 538.

Prescription medications, including multiple rounds of Ivermectin pills and Permethrin cream applied to the entire body, are required in order to eradicate the infestation. [Dkt. No. 15, ¶ 22].

Plaintiff Moredock requested medical attention for the scabies infestation in November of 2016, but was not treated until January of 2017, three months later. This limited treatment did not eradicate the infestation, and he requested more medication in March of 2017. Ultimately, he suffered from scabies for six months, and had to seek treatment at his own expense after his release in May of 2017, despite his numerous requests for medical attention. [Dkt. No. 15, ¶ 53].

Plaintiff Snead developed a scabies infestation on or about May 7, 2017. [Dkt. No 15, ¶ 68, *et seq.*]. Ms. Snead's requests for sick calls were not fulfilled. *Id.* Because of the Defendant's refusal to provide her access to medical treatment, Plaintiff filed repeated grievances against the Defendant, seven (7) in total. *Id.* Even after receiving a prescription from an outside medical provider, Plaintiff Snead was informed her prescription would not be filled. [Dkt. No. 15, ¶ 82-84].

The Scabies Class therefore involves both the denial of prescription medication and the denial of access to medical attention, albeit for treatment of scabies infestations.

**2. The Denied Prescription Class.**

The Denied Prescription Class is defined as all current and former inmates who were prescribed medication that was not administered by the Defendant as prescribed, or whose prescribed plan of treatment was interrupted or delayed by the Defendant, since October 1, 2016.

The denial of prescriptions was not just for treatment of scabies. The Complaint alleges that the Defendant refused to provide Clonidine to treat high blood pressure, [Dkt. No. 15, ¶ 13(h)], mental health medications, [Dkt. No. 15, ¶ 13(e)-(g)], and routinely fails to provide all prescription

8

medication during pill call, including opioid prescriptions for cancer patients [Dkt No 15, ¶ 13(i), (j), (k), (l), (n), (p), (q), (r), (v) *et seq.*].

**3. The Denied Medical Access Class.**

The Denied Medical Attention Class is defined as all current and former inmates who requested, but were denied medical attention and/or treatment, since October 1, 2016.

The Defendant's conduct is not limited to a failure to treat scabies infestations. The failure to provide medical treatment is systemic and intentional. [Dkt. No. 15, ¶ 13]. The Complaint alleges that medical emergencies are called in, but not responded to. [Dkt. No. 15, ¶ 15(j)]. When nurses fail to show up to work, the Defendant does not divide that nurse's assignment or delegate duties in order to ensure that inmates receive medical care. [Dkt. No. 15, ¶ 13(w)]. Inmate sick calls and grievances regarding the lack of health care were ignored by the Defendant. [Dkt. No. 15, ¶ 13(y), ¶ 30, 44, 45, 61, 73, 74, 107].

## III. ARGUMENT

**A. Rule 23(a) Requirements.**

In deciding whether to grant class certification, the Court must first determine whether Plaintiffs meet the four requirements of Rule 23(a), referred to as numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a); *Olden v. Lafarge Corp.*, 383, F.3d 495, 507 (6th Cir. 2004). This Court must then decide whether Plaintiffs have satisfied one of the criteria under Rule 23(b).

On a motion for class certification, Plaintiffs bear the burden of persuading the Court that they satisfy all the prerequisites contained in Rule 23(a). *Rosiles-Perez v. Superior Forestry Serv. Inc.*, 250 F.R.D. 332, 337 (M.D. Tenn. 2008). Plaintiff's burden is not to prove these elements by a preponderance of the evidence, "as that standard applies only to proving the existence of the

class at the time of trial." *Id.* Rather, a plaintiff must present "an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled." *In re American Medical Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996).

Although a district court has broad discretion in determining whether a particular class complies with Rule 23(a) by meeting all four requirements, the application of these requirements should not be so strictly applied that the policies underlying class actions would be undermined." *Weathers v. Peters Reality Corp.*, 499 F.2d 1197, 1200 (6th Cir. 1974). Class actions advance "efficiency and economy of litigation which is a principal purpose of the procedure." *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 159 (1982).

"In assessing the plaintiff's petition, the court assumes the truth of the allegations in the complaint and does not examine the merits of the action." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178 (1974)("We find nothing in either the language or the history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.") "In ruling on a class action a judge may consider reasonable inferences drawn from facts before [her] at that stage of the proceedings, and an appellate court will generally defer to the District Court's determination that a class is sufficiently numerous to make joinder impracticable." *Senter v. Gen. Motors Corp.,* 532 F.2d 511, 523 (6th Cir. 1976)(citations omitted).

**1) Numerosity.**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." *In re Am. Med. Sys.*, 75 F.3d 1069, 1079 (6th Cir. 1996). The "sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor

needed to satisfy Rule 23(a)(1)." *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004).

With regard to numerosity, this court recently explained:

The Sixth Circuit has stated that, although "there is no strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement." *Daffin v. Ford Motor Co.,* 458 F.3d 549, 552 (6th Cir.2006). According to Newberg's often-cited treatise, "the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone." 1 William B. Rubenstein, Alba Conte and Herbert B. Newberg, *Newberg on Class Actions* § 3:5 (4th ed.).

*City of Goodlettsville v. Priceline.com, Inc.*, 267 F.R.D. 523, 529 (M.D. Tenn. 2010)(Trauger, J.)(Finding that 128 members of proposed class is high enough that joinder would be impracticable).

Numerosity is easily satisfied in this case. CoreCivic houses 1,348 inmates at their facility located on Harding Place, which includes both prisoners and pretrial detainees alike. Although Plaintiffs have not yet ascertained the number of individuals who were temporarily housed at the Defendant's Harding facility and released in the past year, it is safe to infer that it is more than several hundred additional persons.

With regard to the Scabies Class, the Complaint alleges that the incidents of infestation were prevalent, involving hundreds of inmates. [Dkt. No. 15, ¶ 135]. The Complaint references a letter that was sent by fifty (50) female inmates to the Health Department on May 8, 2017, all complaining about the lack of medical treatment and the scabies rash. [Dkt. No. 15, ¶ 56]. The Complaint also states that, in response to questioning from the acting Assistant Warden, approximately 100 women in an infested housing pod indicated that they were itching. [Dkt. No. 15, ¶ 78].

The Complaint alleges that the Defendant's failure to provide medications and medical treatment to inmates is systemic and intentional. [Dkt. No. 15, ¶ 13]. With regards to the Denied Prescriptions Class and Denied Medical Access Class, the Complaint alleges that the mental health physician was absent for at least a month between January and August of 2017 and apparently walked off the job, during which time no mental health patients were prescribed any medication. [Dkt. No. 15, ¶ 13(e)]. Those deprived of mental health medications alone could exceed one thousand individuals. The Complaint alleges that many inmates require high blood pressure medication such as Clonidine, which the Defendant routinely runs out of, sometimes for up to a week, creating a substantial risk of heart attack, stroke, heart failure, and kidney failure to numerous inmates. [Dkt. No. 15, ¶ 13(h)]. It is reasonable for this Court to infer that the individuals in these two classes alone number in the hundreds, if not thousands.

**2). Commonality.**

The second prerequisite for maintaining a class action under Rule 23(a) is that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "[A] single factual or legal question common to the entire class" will suffice. *Powers v. Hamilton Cty. Pub. Def. Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). "The Sixth Circuit has characterized the commonality requirement as "qualitative rather than quantitative" and has observed that '[v]ariations in the circumstances of class members are acceptable, as long as they have at least one issue in common.'" *City of Goodlettsville v. Priceline.com, Inc.*, 267 F.R.D. 523, 529 (M.D. Tenn. 2010)(Trauger, J.)(citing *In re Am. Med. Sys.*, 75 F.3d 1069, 1080 (6th Cir. 1996). Plaintiffs' allegations need not be identical to comport with the commonality requirement of Rule 23(a)(2). *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998).

Commonality "focuses on whether a class action will generate common answers that are likely to drive resolution of the lawsuit." *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013).

Here, there are numerous questions of fact and law that are common to all of the members of the proposed classes:

1) Whether the Defendant was deliberately indifferent to the serious medical needs of inmates and pretrial detainees;

2) Whether the Defendant has a policy or practice of failing and refusing to provide medical care to inmates and pretrial detainees;

3) Whether the Defendant has a policy and practice of retaliating against inmates who request medical care or a referral to outside medical care;

4) Whether the Defendant's administrative procedures were unavailable for purposes of the Prison Litigation Reform Act's exhaustion requirement, because of the Defendant's failure to provide literature to proposed class members, or because of prison administrator's actions to thwart inmates from taking advantage of the grievance process through machination, misrepresentation, or intimidation;

5) Whether the Defendant was deliberately indifferent to the need to train its employees to address the obvious medical needs of inmates, including access to medical care and medication;

6) Whether the Defendant failed to train its medical staff on the proper procedures for pill call, sick calls, intake, releases, accuchecks, medical emergencies, seizures, chest pain, and handling inmates going through withdrawal;

13

7) Whether the Defendant failed to train medical staff on the proper procedures for ordering and reordering medication, including how to order medications on an emergency basis;

8) Whether the Defendant failed to train medical staff on the proper procedures for covering the shifts of employees and delegating their tasks when they fail to show up for their shifts;

9) Whether the Defendant failed to train medical staff on the proper procedures for calling doctors in emergency situations;

10) Whether the Defendant failed to train medical staff on the proper procedures for administering medications via central IV lines;

11) Whether the Defendant failed to train employees on the proper methods and means to detect, prevent, and treat scabies infestations within its facility.

12) Whether the medical conditions of Plaintiffs and members of the proposed classes worsened as a result of the Defendant's refusal to provide medical services;

13) Whether the Defendant's intentional transfer of infested inmates into the crowded cells of non-infested inmates constitutes a state-created danger.

These factors, among others, are common to Plaintiffs and the proposed classes. For these reasons, Plaintiffs readily satisfy the low standard for commonality.

**3). Typicality.**

The third prerequisite for maintaining a class action under Fed. R. Civ. P. 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "Together with Rule 23(a)(4)'s adequacy requirement, the typicality requirement focuses on the characteristics of the proposed representative." *City of Goodlettesville*, at 529

(citing *Newberg on Class Actions § 3:13*).  "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct."  *Id.*

 "A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'"  *Beattie v. CenturyTel., Inc.*, 511 F.3d 554, 561 (6th Cir. 2007)(quoting *In re Am. Med. Sys.*, 75 F.3d at 1082).

Here, the Plaintiffs' claims are typical of the classes.  The Plaintiffs' theory – that the Defendant was deliberately indifferent to the medical needs of inmates and pretrial detainees – is the same theory underlying every other class members' claim.  If the jury finds that the Defendant was deliberately indifferent to the Plaintiffs' medical needs by refusing to provide Plaintiffs with access to medical providers, refusing to provide medical treatment after it was requested, and/or by refusing to provide medication as prescribed, it will necessarily mean that the Defendants were deliberately indifferent to other class members who fall within one of the proposed classes.

"Commonality and typicality tend to merge because both of them serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Young*, 693 F.3d 532, 542 (internal citations and quotations omitted). "Like the test for commonality, the test for typicality is not demanding and the interests and claims of the various plaintiffs need not be identical." *Reese v. CNH Am., LLC*, 227 F.R.D. 483, 487 (E.D. Mich. 2005). The inquiry is "whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged

conduct." *Beattie*, 511 F.3d at 561 (quoting *In re Am. Med. Sys.*, 75 F.3d at 1082)(internal quotation marks omitted).  A class representative's claim will be deemed typical even though "the evidence relevant to his or her claim varies from other class members, some class members would be subject to different defenses, and the members may have suffered varying levels of injury." *Reese*, 227 F.R.D. at 487–88(citing *Bittinger v. Tecumseh Products Co.*, 123 F.3d 877, 884–85 (6th Cir. 1997)).

With regard to the Scabies Class, the Plaintiffs claims are not just typical, they are *identical* to those of other class members.

With regard to the Denied-Prescription Class, the type of prescription medications that the Defendant refused to provide or refused to provide as prescribed may vary among members of this class.  For example, the Ivermectin used to treat scabies is different than the Clonidine used to treat high blood pressure.  The Defendant's refusal to provide these necessary medications was nonetheless the result of the Defendant's deliberate indifference to the medical needs of the inmates and pretrial detainees, and therefore is typical of the claims of the classes.

With regard to the Denied Medical Access Class, the type of medical treatment sought by members of the proposed class might differ and might include ailments other than or in addition to a scabies infestation, but they will be readily ascertained by reviewing the Sick Call requests submitted by inmates and determining whether they were addressed by the Defendant and in what time frame.

The individual claims of the Plaintiffs therefore have the same essential characteristics as the claims of all putative class members.  Since it is clear that the same types of issues and proof will be present in Plaintiffs' and the class members' claims, the test of typicality is satisfied.

**4).  Adequacy of Representation**.

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prod., Inc. v. Windsor,* 521 U.S. 591, 625–26, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997)(citations and internal quotation marks omitted). "The common-interest criterion requires that there be no antagonism or conflict of interest between the class representative and the other members of the class." *City of Goodlettesville* at 530 (citing *In re Am. Med. Sys.*, 75 F.3d at 1083). The second criterion inquires into the competence of counsel. *Id.*

As to the first criterion, "[t]he burden in demonstrating that the class representative meets this standard is not difficult." *City of Goodlettesville* at 531 (citations omitted). There is no conflict of interest between the Named Plaintiffs and the absent class members. The Plaintiffs were not only denied medical treatment for weeks or months, they observed other inmates suffer the same torment.

The Plaintiffs have already been deposed in this lawsuit, and therefore, there is no risk that they "have so little knowledge of and involvement in the class action that they would be unable or unwilling to protect the interests of the class against the possibly competing interests of the attorneys." *Id.* (quoting *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 451 (S.D. Ohio 2009)).

With regard to the adequacy of class counsel, "[i]n most instances, adequacy is presumed in the absence of contrary evidence by the party opposing class certification." *Rugambwa v. Betten Motor Sales,* 200 F.R.D. 358, 365 (W.D. Mich. 2001)(citing 2 NEWBERG § 7.24 at 7-82 (collecting cases). In sum, the attorneys must be willing and able to vigorously prosecute the action. See 7A Wright, Miller & Kane §1769 at 375.

We most certainly are.

In this case, the competence of the Plaintiffs' counsel and their ability to see the case to completion exceeds the threshold requirements of the rule. Plaintiffs' counsel has diligently pursued their clients' interests and have taken a lead role in seeking redress for the members of the proposed classes. Counsel have engaged in complex civil litigation similar to the present case and are particularly well-suited for this case.

Accordingly, the Plaintiffs and counsel will fairly and adequately protect the interests of the proposed classes.

**B. Rule 23(b) Requirements**.

"In addition to meeting the requirements of Rule 23(a), a class must satisfy one of the categories of Rule 23(b)." *Young*, 693 F.3d 532, 544.

**1. Rule 23(b)(1).**

Under rule 23(b)(1), if a plaintiff succeeds in showing that (1) prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1).

In the absence of this class action, this Court would face numerous *pro se* complaints filed *in forma pauperis*. This is a waste of judicial resources that would inevitably lead to the inconsistent or varying adjudications due to the lack of legal scholarship that accompanies such lawsuits.

18

## 2. Rule 23(b)(2).

The Plaintiffs allege that the Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Although the Named Plaintiffs are not currently affected by any particular acts and omissions of the Defendants because they have been released, those currently incarcerated are so affected. The failure to provide medication, failure to address sick calls, and failure to train staff are damaging the putative class to the extent this conduct affects currently incarcerated inmates.

Therefore, class-wide injunctive relief is appropriate in this case.

## 3. Rule 23(b)(3).

Rule 23(b)(3) provides a non-exhaustive list of factors that a court should consider in determining whether a class action suit is a superior method of adjudicating the dispute.

The class members' interests in individually controlling the prosecution or defense of separate actions is low. Rule 23(b)(3)(A). This case has been highly publicized and Plaintiffs' counsel have been contacted by numerous members of the proposed classes, none of which have filed litigation or announced any intention to do so.

This Court is a highly desirable forum in which to litigate all of the claims of the class members. Rule 23(b)(3)(C). The Defendant is organized here and venue for all similar claims is proper in this Court. It makes no sense to have dozens of simultaneous cases pending in federal courts when the case is composed entirely of common issues.

There are not likely to be any difficulties in maintaining this case as a class action under Rule 23(b)(3)(D). Members of the proposed classes will be readily identifiable and it will be fairly

19

easy to provide notice of the pending action. All liability issues can be determined under the same legal theories as that of the Named Plaintiffs.

The Sixth Circuit has found that class actions are superior where relatively small recoveries would discourage individuals from bringing suit. *Beattie,* 511 F.3d 554. In this case, some categories of damages for the Scabies Class, such as medical expenses and out-of-pocket expenses to eradicate the mites, could be relatively low, and possibly under $250. "The relatively small amount of money that each individual plaintiff could possibly recover suggests that a class action is the only real meaningful way to afford relief in this case." *Randleman*, 646 F.3d 347, 356 (describing a class action based on $213.57 claimed overcharge). Individual plaintiffs would be discouraged from bringing such a lawsuit against a Defendant who has employed counsel prepared to vigorously defend it against such claims.

A class action is superior in this case because it involves common questions of liability and common sources of evidence. Therefore, a class action will result in more efficient resolution of these common issues.

This Court should certify the proposed classes under Rule 23(b)(3) because "questions of law or fact common to the members of the class predominate over any questions affecting only individual members."

Class certification here is a vastly superior method of adjudication because the common issues will only have to be heard and decided once, thereby promoting judicial efficiency. *City of Goodlettsville* at 534 (citing *Rosiles-Perez v. Superior Forestry Serv., Inc.,* 250 F.R.E. 332, 348 (M.D. Tenn. 2008); *Daffin v. Ford Motor Co.*, 458 F.3d 549, 554 (6th Cir. 2006).

"To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are

subject to only individualized proof." *Randleman v. Fidelity Nat'l Title Ins. Co., 646 F.3d 347, 352* (6th Cir. 2011) (citing *Beattie,* 511 F.3d 554, 564 (6th Cir. 2007)). Further, "the fact that a defense may arise and may affect different class members differently does not compel a finding that individual issues predominate over common ones." *Beattie,* 511 F.3d at 564 (citations and internal quotations omitted).

"[P]otential individual inquires do not defeat the predominance of common questions." *Young*, 693 F.3d 532, 544 (citing *Powers,* 501 F.3d 592, 619 (6th Cir. 2007)(rejecting challenge to class of criminal defendants allegedly denied hearings before being taken into custody based on variations in the experiences of individual class members)). "Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues." *Beattie,* 511 F.3d at 561.

Here, the proposed classes are "sufficiently cohesive" to warrant certification. *Beattie,* 511 F.3d at 564. All, or nearly all, of the issues in this case are common to Plaintiff and all of the other members of the classes. As discussed above, all members of the classes assert the same basis for their claims, namely that the Defendant has violated the class members' rights by being deliberately indifferent to their serious medical needs. There is no difference in the conditions of confinement of pretrial detainees and convicted inmates. [Dkt. No. 15, ¶ 11].

The deliberate indifference to a prisoner's serious medical need constitutes the unnecessary and wanton infliction of pain and violates the Eighth Amendment. *Ruiz v. Martin*, 72 F. App'x 271, 275 (6th Cir. 2003)(quoting *Estelle v. Gamble*, 429 U.S. 97 (1976). Pre-trial detainees have a right under the Fourteenth Amendment to adequate medical treatment, a right that is analogous to the right of prisoners under the Eighth Amendment. *Estate of Carter v. City of Detroit,* 408 F.3d 305, 311 (6th Cir. 2005)(citing *Watkins .v. City of Battle Creek,* 273 F.3d 682, 685-86 (6th Cir.

21

2001)).    Because the analysis is the same and the claims represent the same theory of recovery, this class action is the proper vehicle for the efficient resolution of the claims of the Plaintiffs and the proposed classes.

The Plaintiffs' claims for Failure to Train and State-Created Danger also are common to the claims of the proposed classes, and involve similar constitutional analyses that are common between the Plaintiffs and the proposed classes.

## IV. CONCLUSION

For the reasons above, Plaintiffs respectfully request that the Court certify the three proposed classes:  The Scabies Class, the Denied Prescriptions Class, and the Denied Medical Access Class.

Respectfully submitted,

THE BLACKBURN FIRM, PLLC


/s/ Bryant Kroll
W. Gary Blackburn (#3484)
Bryant Kroll (#33394)
213 Fifth Avenue North, Suite 300
Nashville, TN 37219
P: (615) 254-7770
F: (866) 895-7272
gblackburn@wgaryblackburn.com
bkroll@wgaryblackburn.com

Jeffery S. Roberts, #20263
JEFF ROBERTS & ASSOCIATES, PLLC
213 Fifth Avenue North, Suite 300
Nashville, TN 37219
P: (615) 425-4400
F: (615) 425-4401
Jeff@middletninjury.com

22

R. Joshua McKee
THE MCKEE LAW FIRM
213 Fifth Avenue North, Suite 300
Nashville, TN 37219
P: (615) 425-4400
F: (615) 425-4401
rjm@rjmckeelaw.com

*Attorneys for Plaintiffs*


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served upon the

following via this Court's electronic CM/ECF filing system:

Joseph F. Welborn, III (#15076)
Erin Palmer Polly (#22221)
Butler Snow LLP
The Pinnacle at Symphony Place
150 Third Avenue, South
Nashville, Tennessee 37201
(615) 651-6700
(615) 651-6701

/s/ Bryant Kroll _____